Our next case, Valdiviezo Galdamez versus Attorney General. Valdiviezo Galdamez. Good afternoon, Your Honors. Yeah, it is all of a sudden. May it please the Court, my name is Martin Duffy, and along with Ayodele Gonzalo, I'm pleased to represent the petitioner in this matter, Mauricio Valdiviezo Galdamez. This matter is before this Court on a petition to review an order of the Board of Immigration Appeals, which affirmed without opinion the decision of the immigration judge in this matter, denying Mr. Galdamez's application for relief under the laws of asylum, withholding of removal, and the conventions against torture. Maybe we can begin by focusing on, does he have his best leg to stand on, is it political opinion or is it a particular social group? I'd like to say both, in all honesty, Your Honor, but I'll lead with the particular social group of the two. That would seem to be the stronger in light of the case law. It is our petitioner's position that the immigration judge erred in at least three respects in denying the application for asylum. First, that the judge applied the incorrect legal standard and failed to take into account substantial evidence in support of his position that he was persecuted on account of or by non-actors of whom or from whom the government was unwilling or unable to protect him. Also, that the immigration judge disregarded evidence which supported his position that he was persecuted as a result of his membership in a protected particular social group as well as for his political opinion. And finally, erred as a third matter in failing to make any determination that Mr. Galdamez actually suffered past persecution, which then robbed him of the legal presumption to which he is entitled that it would be presumed that he would suffer future persecution or would have a well-founded fear of future persecution if he was forced to return. And what is the social group? With respect to the social group, Your Honor, it is petitioner's position that Mr. Galdamez is a member of a social group of young Honduran men who have been actively recruited by gangs and who have been persecuted by those gangs for their refusal to accept membership. As Your Honor indicated, there is case law in support of that, and we've attached one opinion of an immigration judge, Judge Susan Castro of the District of Texas, to our reply brief, which are facts almost directly on point. Was that ever appealed? It was not appealed, Your Honor. In fact, for the Court's information, we spoke again to the attorney who was representing the petitioner in that matter yesterday who confirmed for us again that the case had not been appealed by the government. Let me ask a question here, though. I'm looking at the immigration judge's opinion with respect to social group, and it's very general. It doesn't really go into its own 020 of the appendix at the back of the blue brief. The respondent's refusal caused the respondent to be attacked by these men. There's no evidence that these criminal elements are imputed any political opinion on the respondent or that they sought to harm the respondent on account of any one of the five grounds delineated. This was a matter between the respondent and this gang, and there was no nexus to a protected ground. I don't find in this any discussion or reference to the concept of can he be a member of a social group if he has resisted this type of gang and has made it known to them that he doesn't like their lifestyle. In other words, I don't see the agency as having spoken to the issue that you want us to decide, and it's tough to review when there is nothing that's analyzing this issue. What are we to do with this? Was it adequately presented to the immigration judge that this is a gang situation and you need to look at these other cases that talk about gangs? Where is it in the record that this specific argument, which is very unique, was actually put forth and arguably should have been addressed by the immigration judge? Judge Rendell, I agree with you wholeheartedly. It is not addressed by the immigration judge. And since the Board of Immigration Appeals adopted this opinion without opinion, without taking further opinion, we're left with what the immigration judge has to say. Now, while our firm did not represent Mr. Galvin at that stage in reviewing the record, the arguments were presented, both at the merits hearing that he was claiming that he was a member of a particular social group as well as persecuted on account of his political opinion. But as you can see from the judge's opinion, the immigration judge's opinion, there's hardly any discussion, if any, about that particular issue. And it was brought up at the IJ level. Ms. Simon, to the judge, is on page 185 of the appendix. His membership in a particular social group is those who have been actively recruited by gangs but have been refused to join because they oppose those gangs. Exactly. But even if we credit your argument that that should have been granted, should we not send that back for determination as to social group at the agency level? Is that not the kind of, I mean, she hung her hat on on account of the causative factor. If we find that she should have ruled based upon social group or should have discussed that, should we not send that back? Well, the immigration judge's decision is entitled, as the court knows, to deference to the extent that addresses the facts which are before that court, and clearly this court has not done that. Therefore, under the standard of review for which this court has jurisdiction, this court would be entitled, I believe, to address the facts in the record and make a determination as to whether Mr. Galdimas in fact was a member of a particular social group, as that term is defined and interpreted by the case law, and apply that to the facts of the record as we have them. Many of those facts were frankly just ignored by this immigration judge in reaching her opinion. I had trouble finding an opinion which granted social group without political opinion be in it as well. And even in the DV case, there's reference to political opinion. And I also found or didn't find in the appendix the place where your client arguably spoke out about the issue. I think it's referenced in your brief that he did, but do you have appendix references to his having voiced a concern that would be tantamount to that we could also find political opinion? Focusing on the issue of political opinion, Judge? Yes. I believe in response to your question, the reference in the record, and I don't have the citation handy, would be that he refused and advised the group that he would never consider such a thing. With respect to political opinion, a political opinion can be imputed under the case law to an individual and does not necessarily need to be expressed. It was imputed because this was a criminal gang that wanted him to join and engage in other criminal activities, and the court knows that's our position as to the political opinion. But I don't know that there is in the record from his testimony in response to your question somewhere where he said to the effect of, I don't want to join your gang to engage in specifically saying these things, although it was known that these were the activities that this gang carried out, and he made it clear to this gang that he would never consider membership. And under the case law, that political opinion can be imputed. I hope that answers your question. Well, the immigration judge in summarizing the testimony of the respondent said that he refused to join this group because he stated he could not consciously participate with the actions of these young men, he did not want to kill people, which he would have had to do had he been a member of this group, and he did not share the same ideologies with the members of this group. The immigration judge saw no reason not to find his testimony credible. Is that a political opinion? It is, and I would say to the decision of Judge Castro, the immigration judge, it is inherently a political opinion, a political opinion not to engage in murderous activity, a political opinion about crime and not to engage in it and what to do about crime is inherently political. It goes to the fundamental essence of what a political issue is. That was his reason for not wanting to be part of this group. He did not want to engage in a criminal lifestyle, which included, among other things, brutality, rapes, murders, decapitations, et cetera. That's not the life that he wanted to live or participate in. Do we have a BIA opinion on this? There are a lot of opinions out there. Do we have any BIA opinion on this issue? On respect to social groups? This specific rejection of gangs, we have a lot of cases that say rejection of gangs is not a particular social group. Ninth Circuit, actually a lot of Ninth Circuit cases, I should say. Lots of Ninth Circuit cases. But I can't find a BIA opinion that discusses this issue. Rejection and resistance of recruitment of gang membership. And it's just kind of shocking to me that in light of all the Ninth Circuit precedent that says no social group, no social group, no social group when there are gangs, that we don't have some statement from the agency that's authoritative. I cannot recall, to be honest with you, Judge, an opinion from a BIA. I would point to two things, though, that I think may be helpful and instructive in that regard. Under the INA statute, of course, the government is entitled, as is the alien, to appeal a decision by the IJ. And the government decided not to, in this particular case, referring to Judge Castro's decision, appeal the decision. This court, in the case of Cruz v. Attorney General, Third Circuit opinion in 2006, said, while the unpublished BIA decisions that we have consulted are not necessarily in the category of, quote, selected decisions designated to serve as precedents in all proceedings involving the same issue or issues, agencies should not move away from their previous rulings without a cogent explanation. Well, that goes more to the first case we heard today rather than specifically on point. You're saying by failure to speak to the issue on appeal from the agency? By failing to appeal the issue, which was directly, I mean directly on point, addressed by the immigration judge in Texas, the court, as the Third Circuit has indicated, even though not in precedential, is something that an agency should be forced to explain. Okay, well, we don't know why there was no appeal. Maybe they didn't think it was the right case to take up. I don't think we're going to say they're acting inconsistently by failing to appeal. But it is regrettable that we don't have anything to that effect. If I could address your other point, Your Honor, about the various Ninth Circuit cases, and I don't know specifically which cases you're referring to, but many of the cases, or some of the cases at least that I saw, that addressed that issue of refusal to join gangs does not constitute a membership in a social group or a particular social group are distinguishable from the facts of this case. By way of example, I would point to the Lukwaga decision by this court. I would point to the Elia Zakaria's decision by the United States Supreme Court. What those cases dealt with was when the individual attempted to define social group by the persecution that the person was suffering. And the court said the definition of social group can't be defined, or the concept can't be defined by the actual persecution. That's not what can make up the group. That's not what we have here. So those cases are, in fact, distinguishable. I would point to a decision now, it's not a gang, but I think it's closely analogous, or at least instructive, also a decision of this court. I believe Justice Alito wrote the decision, Fatin v. INS, a 1993 decision. Now, what's interesting about that case, and I think it's instructive, is that case addressed the issue where a claim by an alien, an Iranian woman, who had come here to study in the United States and was about to go back. I think her student visa had expired. And the court found that the class of Iranian women who find gender-specific religious laws to be so abhorrent that they refuse to conform, despite enormous penalties for noncompliance, may constitute a particular social group. Now, the court in that particular case said that the applicant, or the alien, didn't qualify because she didn't meet that definition, but that that definition could constitute a particular social group. That is very much like the social group we're talking about here, the group of individuals who are targeted for recruitment by a gang and who refuse to join and then would suffer persecution as a result of their failure to join. And we look to the future persecution, not to the past. The past situation was not actually past persecution. It wasn't persecution until they became part of the group by resisting. Isn't that correct? It's once the resistance occurs, and that is the reason for the persecution. The group is not defined by the persecution as it was, for example, in Luke Waga and Elias Zacharias, the two decisions I just mentioned. What is interesting to your point, Your Honor, I believe, is past persecution, not past in the sense of defining the group, but that was another issue where we believe the IJ erred in this particular case. Mr. Galdamez did, in fact, suffer persecution, as that term has been defined by the case law. In many ways, the court simply ignored that fact. In fact, if the court takes a look at the judge's opinion with respect to his first encounter with this group, the court basically says, and I'm paraphrasing now, they came, they approached him, they robbed him, they said if he wanted his things back, he would have to join him, and they bid him adieu. What actually is in the record, what actually occurred in this case, according to Mr. Galdamez's testimony, which, again, as Judge Randell has pointed out, this court had found credible, no reason to believe it was not true, as the court indicated, was that they asked him to join, and when he refused, they beat him in a circle. So there was retribution for the decision not to join. This court also ignored, that is, the IJ also ignored the fact that at a subsequent time when Mr. Galdamez went back to San Pedro Sula after this first encounter, he had multiple encounters with this group, multiple encounters lasting two and three, twice to three times a week, where they would throw rocks, stones, even shoot at him, and that he went to the police five separate times. The reference to the fact that he went to the police five separate times and nothing occurred is not even mentioned by the IJ in her decision making, which goes, we're jumping a bit, or I'm jumping a bit, but it goes back to the first point, the judge saying there's no credible evidence that the government was unable or unwilling to protect him, ignoring critical pieces of evidence that showed that was in fact the case. As I may have mentioned, I think I mentioned, but if not, the court also applied the incorrect legal standard, as we point out in our briefs. While the standard for persecution by nongovernmental actors is a situation where the government is unable or unwilling, this court required Mr. Galdamez to show that this government, rather, the Honduran police, intentionally refused to protect him, which is a much higher standard than he's required to meet. Intentionally decided not to protect the respondent against these individuals. In deference to the IJ, this was prior to our decision in Silver Ring Depot. Could I just ask you to comment briefly on the suggestion that while he might not be able to go back to San Pedro Sula, he could go elsewhere, to Santa Rosa, to Copan, where he wouldn't be bothered? I'd be happy to, Your Honor. Two points. One is one of the bases which we argue that the immigration judge erred in this particular case was that the judge failed to recognize or failed to even address that he had suffered past persecution. Under the case law, once an applicant, an alien, shows that he or she has suffered past persecution, that person is entitled to a presumption that that person has a well-founded fear of future persecution requiring the government then to come in to show that this applicant, that that well-founded fear is not in fact well-founded and that the applicant could relocate to a different part of the country. The government provided no evidence in this case. There was no evidence rebutting that. And therefore, had the court correctly ruled with respect to his past persecution, he would be presumed and entitled to the presumption that he has a well-founded fear of future persecution. Point one. Point two, Your Honor. Again, the IJ failed to take into account significant information. In her opinion, she states, went back to Santa Rosa de Copan and apparently had no problems. And again, I'm paraphrasing. But what Mr. Galdamez's testimony was is he stayed in the house almost all the time out of fear that he would be identified and that retribution would be met upon him. He indicated that classmates of his who were still in town, Santa Rosa de Copan, his place of birth, had now joined the gangs, knew where he lived, knew who he was. Nothing further. Will, did you reserve rebuttal time? I did. Two minutes, Your Honor. All right. Thank you, Your Honor. Good afternoon, Your Honor. May it please the court, Assistant U.S. Attorney Colette R. Buchanan on behalf of the respondent. Your Honor, the court should affirm the decision below because the IJ's decision, which is what's subject to review since the board did not write on the case itself, is supported by substantial evidence. Let me work backwards, if I may. This is on the inability to protect. In other words, the IJ talked about there was no intentional decision on behalf of the government. But in light of our decision in Sovereign GIFO, which says that the inability to protect needs to be discussed, where is there any discussion about the inability to protect Mr. Tarabiezo? Well, Your Honor, the IJ did not discuss in detail the police's ability to protect. I believe they – Doesn't that just right there call for a remand, at least on that issue? I don't think necessarily, Your Honor, because I don't think that he meets the other criteria so that if it was remanded to discuss his ability to be – the ability of the police to protect him, he would still have to – that would only be necessary if you find that he is – that he was subject to that activity because of his membership in a particular social group. And we would argue that that – he hasn't met that burden. As far as what the IJ said with regard to the police, we disagree that she created a higher standard by the language that she used. What she basically said was there's no demonstration that they're unwilling to protect him, which is what the legal standard is. She used the different language saying an intent not to help him, but that's no different, we would argue, that the – from being unwilling. Didn't she ignore all this evidence, though, of the police – the contact with the police? It seemed like there was a lot of documentary evidence. Like five incidents. Your Honor, I believe she mentions that earlier in her opinion. She does – when she discusses the evidence, when she discusses the facts, I think my recollection is that she did mention that he had gone back to the police on more than one occasion. What documentary evidence did he put in before the IJ? He put in a lot of documentary evidence regarding gang activity and in Honduras, newspaper reports. Was that cited by the IJ? It was referenced in the beginning of the opinion where she described what was part of the record. She didn't go into detail about the evidence. That doesn't mean that she ignored it, Your Honor. I would submit that the immigration judge doesn't have to recite. But for us to review something that's as important as that, especially for somebody that she obviously gives credibility to, isn't it necessary that she deal with it, it's out there, and here's why I think it doesn't cut his way or does cut his way, and even if it does cut his way, I'm not going to follow it? I don't think it's necessary that she have referred to it. It certainly would have been helpful to the court, but I don't think it's necessary because she made the explicit factual finding that the actors were criminals and that their interaction with the petitioner, the law respondent, was strictly as individuals of a criminal nature, not of a political nature, and not based on his status in any particular social group. She didn't go into detail about it, but you could see in her decision where she states these actors are criminals and their encounters were of an individual nature. But doesn't she have to talk about the future, the possibility that in the future because he has taken this stand against them that the interaction that they had before is evidence and that he would face future persecution, it was likely on account of his membership in this? I mean, if you buy the social group aspect or the political opinion aspect, but she almost doesn't address that. She goes more to the causative nature as to the past, but it's an unusual situation where the causative nature as to the past may not bear a direct relationship to the predictive aspect of what's going to happen in the future. The next time, if he goes back, and the next time they encounter him, you could say it's not just because they had a disagreement before. It's because they now are targeting him because he's a refuser. Well, Your Honor, the judge did discuss the fact that he went back to Santa Rosa and lived with his mother, and was not bothered by the gangs there. So the immigration judge made the finding that he was not subject to persecution or harassment by the gangs in other parts of Honduras. Wasn't he in hiding at that point? Well, his testimony was that he never left the house. Well, and she credited him as being credible. But he did go back to San Pedro de Sul to work, and he lived there for a year. Your Honor, IJ's opinion is not as explicit and detailed as we would like, but putting that aside, I believe that the petitioner should not prevail on his claim because legally he cannot prevail because his defined particular social group is not appropriate under the Refugee Act. Under the Fatin case that then Judge Alito was the author of, if you say that a particular social group could be Iranian women who refuse to comply with their government's gender-specific laws despite the threat of severe punishment, that seems like that fits pretty nicely with Honduran young males who refuse to join a group that is documented to be engaging in very serious lawless activities. Well, Your Honor, the petitioner's defined group, a group of young males, a particular age group, so it's not permanent. It's not a permanent attribute. A group of young males who have refused to join a gang, I think fits more closely to the Salvadoran men who refused to join the guerrillas. And in Elias Zacharias, the Supreme Court rejected that. That's a paramilitary group. But the court rejected that as the basis of a social group, and I think that's closer to refusing to join a criminal gang than it is to a group of women being subjected to persecution by the government itself. I would argue that under this court's decision in Escobar, which is more recent than Fatin, where the court rejected Honduran street children, there's no real distinction between this other than they've added a few more characteristics. I mean, in that decision, the court rejected the group as a particular social group under the statute because it did not have immutable characteristics. Age is not an immutable characteristic. There's also a case law that says... That was going towards, I think, there was not experienced persecution already in existence. So that here, he has already, whether he likes it or not, he has become a member of a group because he has resisted and stated that he will have no part in this. So Honduran street children in Escobar were subject to various forms of persecution. They argued that the maltreatment by the police and the public... Maybe I'm talking about the likelihood here. As to him, a future. In this case, Your Honor, I would argue that he did not establish persecution because the type of harassment that he had wasn't severe enough to rise to the level of persecution under the statute and under the case law. This has to be extreme behavior threatening to life, although the gang... If he doesn't join, he could be killed. Your Honor... In fact, there's a fairly decent chance. Your Honor, there's certainly an awful gang situation in Honduras, as there is in El Salvador, as there is in much of Central America. But the courts have not accepted that as a particular social group. The Refugee Act is not meant to solve the problems of civil unrest and crime in every country on the planet, Your Honor. It's got to be more narrow than that. And the courts have held that it can't be construed as to... As Judge Alito has said, at least in Fatin, the dimensions are unending. If a particular social group is so unlimited in its language, that it has to be construed and it has to be given some structure. And that structure has been immutable characteristics. And that can either be race, sex, gender, or some kind of shared experience now. A shared experience. How about that? In this case, well, Your Honor... What group, what other members of this group are there? It's not externally distinguishable, which is another criteria that has been... Which is another requirement that has been for a particular social group, that there be some external signs, people that are a member of that group. In this case, he's... Every 18 to 25-year-old Honduran male would be entitled to asylum. If they have been persecuted in the past based upon this. And according to him, everybody in Pedro de Soula is. Well, what's the best BIA reasoned opinion that we have on this issue? Your Honor, we don't have... It's either from Honduras or Guatemala or El Salvador. I have seen, as Your Honor has, decisions from other courts of appeal, but I could not find a written BIA decision. I'm trying to tie this into what Judge Rendell asked your opponent. You cited Escobar. But isn't this case really significantly different than Escobar because Mr. Valdez's group is bound primarily by a fundamental belief that they do not and will not participate in lawless activity done by gangs and will not join the gang. So it's a social group combined with some type of fundamental belief. Well, Your Honor, I don't think that particular social group... Well, a particular social group could be defined by a belief, but there again we get into is it an immutable characteristic. I mean, a 15-year-old could say, I'm not going to join a gang, and then two years later decide to join a gang. Well, in Fantin it wasn't necessarily immutable because we said women who refuse to go along, maybe they've changed and decide to go along. It seems to me the immutable characteristic works well as a catchphrase, but we haven't really adhered to it. Or it needs clarifying. Well, perhaps it needs clarifying. But in this case, Your Honor, as far as he shares a belief, that still would be such a large class, such a large group, that it just opens up the boundaries to I don't want to go to class. What about someone who has a firm belief that they... I think this person is saying, I don't want to be killed. I don't want to join this group because I don't believe in them. And I was persecuted in the past because of this, and if I go back, they're going to... Pardon? The persecution cannot be part of the definition of the group. Not as to what you're asserting for the moment, but it certainly is, once it happens, it can define you for purposes of the future. I mean, we made pretty clear that that's what we were talking about, and I think it was Likwago. The child soldier. Yes. For that purpose. I mean, if he had never been persecuted, we would not say, you know, you today say that you don't want to be part of that lifestyle, so we will find that you're a member of the social group. But once he's been persecuted, that can be, as to the likelihood of future persecution, evidence. But are you using the persecution itself to define the group? Because my reading of this Court's decisions is that the persecution in itself cannot be part of what defines the group. The group has to exist separate and apart from the persecution. But I think as to... But here it doesn't. No, I think what's being said is that this particular individual, because he had this belief that he did not want to participate, refused to participate, was persecuted. And he resisted and became part of that social group. The cases have defined the group as larger, more expansive than immutable characteristics, such as race or gender or past condition, and has now characteristically been stated as also someone who possesses characteristics that are capable of being changed, but of such fundamental importance that individuals should not be required to modify it. Now, religion would be such fundamental importance. For some people, conscientious objection is, here, the man didn't want to murder, kill, and rape. You don't think that that's of fundamental importance, so you shouldn't have to change your mind about it? Well, you shouldn't have to change your mind, but I just think that if the Court is saying that every law-abiding person in Honduras, in this case, but any other country who refuses to join a gang is then considered a refugee under our law, I think that's going too far. And if I can get back to what Judge Rondell asked my opponent, whether this Court should weigh into that decision without the agency having issued it, since the BI hasn't addressed whether this defined group could be considered a particular social group under the INA and the Refugee Act, I would submit that the Court should, if you're inclined to believe that this could be a particular social group, that I would suggest the agency should speak to it first. If we're inclined to go the wrong way, we should not do it and send it back to the agency? Well, Your Honor, I think in particular, as courts have noted, because of the INS, because of the agency's unique position, it deals with matters of international relations and diplomacy, it's more important that the agency address these issues in the first instance than the Court. Although it's curious, the Ninth Circuit has spoken on it a lot, and it would seem the BIA could speak to it if they wish. Let me just clarify. In Malacuago, we agreed that although the shared experience of enduring past persecution may, under some circumstances, support defining a particular social group for purposes of future persecution, it doesn't support defining a particular social group for past persecution because the persecution must have been on account of a protected ground. So here, you can say that the IJ may have been, it may be inappropriate for her not to say he was a victim of past persecution because of a social group, but for purposes of the likelihood of future persecution, you can take into account that the resistance and what happened to him as a result of that makes him part of a social group. And I think it's very much like Licuago, I think. Your Honor, I didn't see it as similar to Licuago, Your Honor. I see my time is up if you have more questions. You say it's sentenced back to BIA, but didn't the BIA have a full opportunity to weigh in on this when there was an appeal from the IJ's decision here? Well, Your Honor, they did. And by rejecting the appeal, I would say that they implicitly rejected the argument that this is a particular social group or that he was persecuted on account of a political opinion. But it's kind of, it makes it tough for you to say let the BIA have the first shot at it when they had the first shot at it. Well, there have been instances where courts of appeals have sent things back to the BIA to give them explicit instructions. And I think in particular the Second Circuit did that with regard to finding a frivolous claim where, you know, theoretically the BIA could have addressed it and didn't and then the specific instruction was made to make this decision. I'm not saying the court's without the power to do it. I just ask that because of the unique role of the agency in interpreting the Refugee Act and there have been decisions out of this court and the Supreme Court that have recognized the importance of that, that would be the first inclination that you should be doing. The interesting issue is since the agency has not really spoken on this issue, the level of deference that we would afford to what the agency has said, I think it was in Smirko, we did not say that if the BIA is a summary of firm that we take that as the agency having spoken in an area as to which we would defer. That's correct, Your Honor. If they haven't given a clear statement of their reasoning, then there isn't anything to defer to. Great. Thank you. Thank you, counsel. Mr. Duffy. Just a few hopefully brief points. With respect to the issue that the court was grappling with, Judge Shapiro, I think, was referring to the Escobar decision as to this issue of this immutable characteristic and whether the courts have clarified it. This court, in fact, did clarify it in the Escobar decision where the court held that a particular social group is either those who possess immutable characteristics such as race, gender, or a prior position, status, or condition, or those who possess a characteristic that is capable of being changed but is of such fundamental importance that individuals should not be required to change it. That was Judge Shapiro's point. It was the Escobar decision. That's precisely what we're talking about here. There's not a danger that this is an open door to all Honduran people or even young Honduran people. This is a limited and discrete group, much like Judge Castro recognized in her opinion in Texas. It does not include all Honduran youths because the gangs do not persecute, do not recruit all Honduran youths. It's those who are recruited and who refuse to join. Counsel mentioned the Elias Zacharias decision of the Supreme Court, believing this court, the facts of this case are more closely related to that case than, say, the Fatim decision. In Elias Zacharias, it was not a case involving a particular social group but rather a political opinion, and of some interest in that case. The court did not say that under those circumstances it could never be a political opinion. It said not necessarily a political opinion because in the facts of that case, the person's reason for not wanting to join was that he was afraid of retribution from the government for joining the rebel forces, not that he had an opposition to a life of criminal activity. He didn't hold a specific political opinion. It was the political opinion of the others that he supported. Exactly, and none could be imputed to him. That was distinguishing. Okay. Thank you, Your Honor. Thank you. And, Mr. Duffy, thank you. I think your firm volunteered to help with this. We appreciate that very much. Very helpful to the court. Thank you. We appreciate it. Thank you, Counsel. The case is well argued. We'll take it under advisement. We will be hearing our last case, but let me confer with the panel for just a minute. Yeah. Food-wise and everything-wise? Yeah. Are you okay to keep talking? I don't need the Chinese judge. All right. We'll call our